WO                     IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


| | |
|---|---|
| DANA H. DANIELS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| COMMISSIONER, SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | No. 2:14-cv-0617-HRH |
| Defendant. ) | |
| _____ ) | |


O R D E R

This is an action for judicial review of the denial of disability benefits under Title II

of the Security Act, 42 U.S.C. §§ 401-434.  Plaintiff has timely filed his opening brief,[1] to

which defendant has responded.[2]  Oral argument was not requested and is not deemed

necessary.

Procedural Background

Plaintiff is Dana H. Daniels.  Defendant is the Commissioner of the Social Security

Administration.

_____

[1]Docket No. 18.

[2]Docket No. 20.

-1-

On November 15, 2010, plaintiff filed an application for disability benefits under Title II of the Social Security Act.  Plaintiff alleged that he became disabled on September 5, 2009.  Plaintiff alleged that he is disabled due to cerebral and cerebellar atrophy and a left dislocated sacroiliac joint.  Plaintiff's application was denied initially and upon reconsideration.  After a hearing on July 27, 2012, an administrative law judge (ALJ) denied plaintiff's claim.  On February 27, 2014, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's October 26, 2012 decision the final decision of the Commissioner.  The Appeals Council considered new evidence submitted by plaintiff, but concluded that  it did "not provide a basis for changing the Administrative Law Judge's decision."[3]  On March 25, 2014, plaintiff commenced this action in which he asks the court to find that he is entitled to disability benefits.

## General Background

Plaintiff was born on June 1, 1960.  He was 52 years old at the time of the hearing. Plaintiff has a high school education.  Plaintiff lives in a house with his girlfriend.  Plaintiff's past relevant work includes work as a paint prepper, laborer, parts manager, and service parts technician.  On September 5, 2009, plaintiff was injured when the light rail car he was riding in was hit by an SUV.  Plaintiff was in good health prior to the light rail accident but after the accident, he began having chronic headaches, neck pain, back pain, sensory

---

[3]Admin. Rec. at 2.

-2-

abnormalities, and hearing loss and tinnitus.[4]

The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the

Social Security Act through March 31, 2013."[5] The ALJ then applied the five-step sequential

analysis used to determine whether an individual is disabled.[6]

_____

[4]Admin. Rec. at 404-405 (diagnoses of Dr. Mussomeli, a neurologist who treated plaintiff after the accident).

[5]Admin. Rec. at 29.

[6]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... h[im] to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since September 5, 2009, the alleged onset date...."[7]

At step two, the ALJ found that plaintiff had "the following severe impairments: sensorimotor polyneuropathy, left ulnar neuropathy, osteoarthritis and degenerative disc disease of the cervical spine, lumbar facet arthropathy, right rotator cuff syndrome, right biceps tenosynovitis, migraine headaches, cerebral atrophy, a balance disorder, and a cognitive disorder...."[8] The ALJ considered that "the record reflects that [plaintiff] develops seborrheic and actinic keratosis lesions ... and that he has patent foramen ovale...."[9] The ALJ found that the lesions were not a severe impairment because "[t]he skin lesions are benign, many of them have been treated with cryosurgery, and as to the remaining lesions, the claimant has been advised to monitor them for any unusual changes...."[10] "As to the patent foramen ovale, aspirin therapy has been recommended ..., and the claimant's treating physician has placed 'no cardiac restriction' on him...."[11]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

---

[7]Admin. Rec. at 29.

[8]Admin. Rec. at 29.

[9]Admin. Rec. at 29.

[10]Admin. Rec. at 29.

[11]Admin. Rec. at 29.

impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[12]  The ALJ considered Listing 11.14 (peripheral neuropathies), Listing 11.04B (a central nervous system vascular accident with "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station"), Listing 1.04 (disorders of the spine), Listing 2.07 (disturbance of labyrinthine-vestibular function); Listing 11.03 (epilepsy), Listing 1.02 (major dysfunction of a joint due to any cause), Listing 11.17A (degenerative disease not listed elsewhere with a disorganization of motor function as described in 11.04B), Listing 11.17B (degenerative disease not listed elsewhere with chronic brain syndrome), and Listing 12.02 (organic mental disorders).[13]

The ALJ considered whether plaintiff met the "paragraph B" criteria.  The ALJ found that plaintiff had no restriction in activities of daily living; no difficulties with social functioning; moderate difficulties with regard to concentration, persistence, or pace; and no episodes of decompensation.[14]  The ALJ also considered whether plaintiff met the "paragraph C" criteria, which

> require evidence of (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment

---

[12]Admin. Rec. at 30.

[13]Admin. Rec. at 30.

[14]Admin. Rec. at 31.

> would be predicted to cause the individual to decompensate; or (3) a current history of one or more year's inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.[15]

The ALJ found that "the evidence fails to establish the presence of any of these 'paragraph C' criteria."[16]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot be exposed to dangerous machinery and unprotected heights; he can never climb ladders, ropes or scaffolds; and he is limited to work that is not performed in a fast-paced production environment."[17]

The ALJ found plaintiff's statements about his pain and symptoms less than credible because his "assertion that he lost his job due to injuries received in the light rail accident appears inconsistent with the evidence."[18]  The ALJ also found plaintiff's statements less than credible because they were not supported by the objective medical evidence.[19]

---

[15]Admin. Rec. at 31-32.

[16]Admin. Rec. at 32.

[17]Admin. Rec. at 32.

[18]Admin. Rec. at 33.

[19]Admin. Rec. at 34.

The ALJ gave great weight[20] to the opinion of Dr. Nellis.[21]  The ALJ also gave great weight[22] to the opinion of Dr. Levinson.[23]  The ALJ gave partial great weight[24] to opinions of Dr. Jones,[25] Dr. Kundin,[26] and Dr. Green.[27]  The ALJ gave little weight[28] to the opinion of

---

[20]Admin. Rec. at 34-35.

[21]Dr. Nellis was an examining source whose opinion will be discussed in detail below.

[22]Admin. Rec. at 34.

[23]On May 10, 2011, Dr. Levinson opined that plaintiff "has some difficulty with visual processing, but is able to complete simple repetitive routines consistently" and is able to "maintain adequate" concentration, persistence, and pace; and adequately maintain a work schedule.  Admin. Rec. at 89-90.

[24]Admin. Rec. at 35.

[25]Dr. Jones examined plaintiff on April 12, 2011.  Dr. Jones opined that plaintiff had no restrictions as to lifting/carrying; no limitations as to walking, standing, or sitting; could never climb ladders/rope/scaffolds; could frequently finger and feel; had no limitations as to climbing ramps/stairs, stooping, kneeling, crouching, crawling, reaching, and handling; and should avoid working around heights and moving machinery.  Admin. Rec. at 453-455.

[26]On May 10, 2011, Dr. Kundin opined that plaintiff could occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; stand/walk for 6 hours; sit for 6 hours; could never climb ladders/ropes/scaffolds; was unlimited as to climbing ramps/stairs, pushing, pulling, stooping, kneeling, crouching, and crawling; could occasionally balance; was limited as to reaching overhead; should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and should avoid all exposure to hazards.  Admin. Rec. at 87-89.

[27]On September 17, 2011, Dr. Green affirmed Dr. Kundin's RFC.  Admin. Rec. at 105-106.

[28]Admin. Rec. at 35.

Dr. Baker.[29]  And, the ALJ also gave little weight[30] to the opinion of Dr. Brown.[31]

At step four, the ALJ found that plaintiff was unable to perform any of his past

relevant work.[32]

At step five, the ALJ found that "there are jobs that exist in significant numbers in

---

[29]Dr. Baker is an orthopedist who began treating plaintiff on December 1, 2011. Admin. Rec. at 580-585, 601-607 & 628-636.  On July 20, 2012, Dr. Baker opined that plaintiff could sit for 2 hours; stand for 30 minutes; walk for 10 minutes; could occasionally lift/carry 5 pounds; could not use his hands for pushing and pulling arm controls or for fine manipulation; could not use his feet for repetitive motion; could not bend, squat, crawl, climb or reach; should not work around unprotected heights and moving machinery; should not be exposed to marked changes in temperature and humidity; and had a moderate restriction as to driving automotive equipment and being exposed to dust, fumes, & gases. Admin. Rec. at 641-642.  Dr. Baker opined that plaintiff's pain, fatigue, drowsiness and dizziness severely affect his ability to pay attention and/or concentrate on tasks; attend work; maintain interpersonal relationships with supervisors, co-workers or the public; and provide consistent work effort.  Admin. Rec. at 641-642.  Dr. Baker opined that plaintiff would need a sit/stand option for working, would need to take a 15 minute break every half hour, and was capable of low stress jobs but would be absent from work more than four days per month.  Admin. Rec. at 644 & 646.

[30]Admin. Rec. at 35.

[31]Dr. Brown was plaintiff's PCP.  On July 25, 2012, Dr. Brown noted that he had treated plaintiff since 2009 for his headaches and that plaintiff has a severe headache 1-2 times per day, each of which lasts 2-6 hours.  Admin. Rec. at 647.  Dr. Brown opined that when plaintiff has a headache he would be precluded from performing even basic work activities and would need to take a break; that plaintiff would need to take two such breaks a day; and that he would need to rest 2 hours before returning to work.  Admin. Rec. at 649-650.  Dr. Brown also opined that plaintiff would miss more than four days of work per month due to his headaches.  Admin. Rec. at 650.

[32]Admin. Rec. at 35.

-8-

the national economy that the claimant can perform."[33]  This finding was based on the

vocational expert's testimony that plaintiff could work as a office helper or a food service

worker.[34]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined

in the Social Security Act, from September 5, 2009, through the date of this decision...."[35]

<u>Standard of Review</u>

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision of

the Commissioner...."  The court "properly affirms the Commissioner's decision denying

benefits if it is supported by substantial evidence and based on the application of correct

legal standards."  <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial

evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Id.</u>

(quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether

substantial evidence supports the ALJ's decision, [the court] review[s] the administrative

record as a whole, weighing both the evidence that supports and that which detracts from

---

[33]Admin. Rec. at 36.

[34]Admin. Rec. at 36.  George Bluth testified as the vocational expert.  Admin. Rec. at 69-74.

[35]Admin. Rec. at 37.

the ALJ's conclusion.'"  Id.  If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision.  Id.  But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'"  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

<u>Discussion</u>

Plaintiff first argues that the ALJ erred because she did not consider the opinions of Drs. Fife and Schultz.  Dr. Fife began treating plaintiff at the Barrow Neurology Clinic on June 14, 2011.  On that day, Dr. Fife noted that plaintiff reported "depression and wide mood swings that seem to intrude upon his thoughts, and he has rushing thoughts at times that he cannot control fully."[36]  One of Dr. Fife's diagnostic impressions on June 14, 2011 was "[p]rogressing imbalance" and the plan was to "obtain some further functional studies of the cerebral cortex by means of neuropsychological testing and an EEG."[37]  On August 23, 2011, Dr. Schultz did the neuropsychological testing that Dr. Fife recommended.  Dr. Schultz noted that plaintiff had "a severe level of depressive symptoms" and "substantial daytime sleepiness" and that these may contribute to plaintiff's reported functional

---

[36]Admin. Rec. at 461.

[37]Admin. Rec. at 462.

limitations.[38] Plaintiff argues that these were "opinions" of treating physicians that the ALJ was required to consider, which she failed to do because she did not mention either of these "opinions" in her decision.

"Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). "Therefore, an ALJ may not reject treating physicians' opinions unless [s]he 'makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" Id. (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). "[A]n ALJ cannot avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it." Lingenfelter v. Astrue, 504 F.3d 1028, 1038 n. 10 (9th Cir. 2007).

However, neither Dr. Schultz nor Dr. Fife offered an opinion about plaintiff's functional limitations. Rather, Dr. Fife made an observation about plaintiff's depression while treating plaintiff and Dr. Schultz made observations about plaintiff's depression and daytime sleepiness while performing psychoneurological testing. These were not "opinions" which the ALJ was required to consider. Dr. Fife's and Dr. Schultz's observations were simply part of the medical evidence of record. The ALJ is not required

---

[38]Admin. Rec. at 470.

to discuss every piece of medical evidence.  <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003).  Thus, the ALJ's failure to mention Dr. Fife's and Dr. Schultz's observations was not error.

Plaintiff next appears to argue that the ALJ erred in giving Dr. Nellis' opinion great weight.  Amanda Nellis, Ph.D., LPC, did a psychological evaluation of plaintiff on April 8, 2011.  Dr. Nellis opined that plaintiff

> did not demonstrate difficulty remembering instructions.  At the current time, he does not appear to be impaired in this area. He would likely understand work-like procedures. A memory assessment was not conducted on Mr. Daniels, which was his reported concern.  He appeared to have some difficulty at times retrieving information/words, but was able to remember instructions provided to him on all subtests of today's administration.  Mr. Daniels is able to concentrate and persist through tasks that are difficult for him and did not require any encouragement to do so.  He did not appear to have difficulty carrying out instructions. He was able to concentrate throughout today's administration.  Regular attendance and persistence may be more of a concern for Mr. Daniels.  Attendance and persistence concerns would be associated with chronic pain and headaches, however, and less likely from his cognitive abilities or his ability to concentrate on tasks. Mr. Daniels appears to get along well with his peers and was cordial and social during his evaluation.  He maintains several close friendships.  He would likely get along with co-workers and respond appropriately to supervision.  His chronic pain may interfere with socially appropriate behavior at times, for example he would likely withdraw from social situations when pain is elevated.  He was groomed and would be able to adhere to the basic standards of neatness.  Mr. Daniels would likely respond to direction in the work setting and would be

-12-

aware of and responsive to normal hazards.[39]

Dr. Nellis also noted that plaintiff "reported difficulty with memory and retrieval of information; however, today's evaluation did not fully encompass measuring these abilities."[40]

The ALJ gave Dr. Nellis' opinion great weight because it was "in accord with [plaintiff's] cognitive testing[.]"[41]  In considering what weight to give a medical opinion, regardless of its source, the ALJ considers the "length of the treatment relationship and the frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors that tend to support or contradict the opinion[.]"  Garrison v. Colvin, 759 F.3d 995, 1012 n.11 (9th Cir. 2014) (internal citations omitted).  The opinion of an examining source who conducts an independent investigation can constitute substantial evidence supporting the ALJ's decision.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

It is somewhat troubling that the ALJ gave great weight to Dr. Nellis' opinion even though she expressly stated that her evaluation did not encompass plaintiff's reported issues with memory and retrieval of information.  The point of Dr. Nellis' evaluation was

---

[39]Admin. Rec. at 446.

[40]Admin. Rec. at 443.

[41]Admin. Rec. at 34-35.

to do a cognitive assessment; yet she did not evaluate the primary cognitive problem of which plaintiff complained.  The court's concern as to Dr. Nellis' opinion is elevated by the Appeals Council's treatment of Dr. Geary's opinion.

On December 21, 2012, which was after the ALJ had rendered her decision, Brent Geary, Ph.D., did a psychological examination of plaintiff.  Dr. Geary opined that plaintiff

> appears to meet criteria for impairment under 12.02 Organic Mental Disorders.  He demonstrated significant memory impairment[.] Dana discussed changes in his personality since the light rail accident, and he produced impaired range performance on both the Trail Making Test and Booklet Category Test.  He also seems to demonstrate impairment under 12.04 Affective Disorders. Dana is troubled by pervasive loss of interest, sleep disturbance, psychomotor retardation, feelings of worthlessness, and difficulties concentrating and thinking.  The Panic Disorder seems to meet criteria under 12.06 Anxiety-Related Disorders.  Dana has apprehensive expectation when he leaves his home and in particular, when he is a passenger in a motor vehicle.  He has recurrent panic attacks as well as intrusive recollections of reminders related to the light rail accident.  These impairments appear to cause marked limitations in Dana's activities of daily living, mainte-nance of social functioning, and in his ability to sustain concentration and pace.  The prognosis in this case is poor at present.  Mr. Daniels requires assistance managing benefits.[42]

As for functional limitations, Dr. Geary opined that plaintiff's ability to understand, remember, and carry out short and simple instructions; make simple work-related decisions; maintain socially appropriate behavior and adhere to basic standards of neatness

---

[42]Admin. Rec. at 674.

and cleanliness; and be aware of normal hazards and take appropriate precautions was mildly impaired.[43] Dr. Geary opined that plaintiff's ability to sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; and interact appropriately with the general public was moderately impaired.[44] Dr. Geary opined that plaintiff's ability to carry out detailed instructions; maintain attention and concentration for extended periods; respond appropriately to changes in the work setting; and travel to unfamiliar places or use public transportation was moderately severely impaired.[45] And, Dr. Geary opined that plaintiff's ability to understand and remember detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; respond to customary work pressures; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and lengths of rest periods; and set realistic goals or make plans independently of others was severely impaired.[46]

   Dr. Geary's assessment and opinion were submitted to the Appeals Council, which

---

[43]Admin. Rec. at 677-678.

[44]Admin. Rec. at 677-678.

[45]Admin. Rec. at 677-678.

[46]Admin. Rec. at 677-678.

considered this evidence.  Because the Appeals Council considered this new evidence, it became "part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012).

Although defendant "concedes that if credited, the materials from Dr. Geary suggest the possibility that [p]laintiff is mentally disabled,"[47] defendant argues that does not mean that there is still not substantial evidence to support the ALJ's decision.  Defendant argues that a reasonable ALJ would not have credited Dr. Geary's opinion and that Dr. Nellis' opinion provides an adequate basis for rejecting Dr. Geary's opinion.

Dr. Geary's analysis of plaintiff's nonexertional functional limitations was more exhaustive than that of Dr. Nellis.  As discussed above, Dr Nellis' evaluation did not address plaintiff's reported issues with memory and retrieval of information.  Thus, Dr. Nellis' opinion, by itself, would not have been an adequate basis for rejecting Dr. Geary's opinion.  If Dr. Geary's opinion is credited, the ALJ's decision is not supported by substantial evidence. Dr. Geary's opinion might have led to a disability determination had that opinion been before the ALJ.

Finally, plaintiff argues that the ALJ erred in finding his pain and symptom statements less than credible.  "An ALJ engages in a two-step analysis to determine

---

[47]Defendant's Brief at 7, Docket No. 14.

whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison, 759 F.3d at 1014.  "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. (quoting Lingenfelter, 504 F.3d at 1035-36).  "In this analysis, the claimant is not required to show 'that h[is] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom.'"  Id. (quoting Smolen, 80 F.3d at 1282).  "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'"  Id. (quoting Smolen, 80 F.3d at 1281).  "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281).  "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'"  Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).  "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'"  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)).  "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or

between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]"   Id. (internal citations omitted).

The ALJ gave two reasons for finding plaintiff's pain and symptom statements less than credible.  First, the ALJ found  his "assertion that he lost his job due to injuries received in the light rail accident" to be "inconsistent with the evidence."[48] Second, the ALJ found plaintiff's statements less than credible because they were not supported by the objective medical evidence.[49]

As for the first reason, the ALJ explained that plaintiff's assertion that he stopped working because of the light rail accident was inconsistent with his earning records, which showed earnings only in the first quarter of 2009 and no earnings in 2008.[50]  However, plaintiff submitted evidence to the Appeals Council that shows that he was working beyond the first quarter of 2009.[51]  This evidence shows that plaintiff worked in May, June, July, and August of 2009.  Plaintiff's accident was in September 2009.  The evidence put

---

[48]Admin. Rec. at 33.

[49]Admin. Rec. at 34.

[50]Admin. Rec. at 33.

[51]Admin. Rec. at 255-258.

before and considered by the Appeals Council negates the ALJ's first reason for finding plaintiff's testimony less than credible.

As for the second reason, "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence[.]" <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001). Because the first reason given by the ALJ has been negated, the lack of corroborating medical evidence by itself cannot constitute substantial evidence supporting the ALJ's credibility finding.

Because the ALJ's decision is not supported by substantial evidence, the court must determine whether to remand this matter for an award of benefits or for further proceedings. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." <u>Id.</u>

> More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Id.</u>

-19-

Plaintiff argues that a remand for an award of benefits is appropriate here if his testimony and Dr. Geary's testimony is credited as true. But there is no testimony in this case from the vocational expert that someone with the limitations described by plaintiff would be precluded from work or that someone who had the limitations opined by Dr. Geary would be precluded from all work. Further development of the record is thus required.

<u>Conclusion</u>

Based on the foregoing, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 2nd day of April, 2015.

/s/ H. Russel Holland
United States District Judge